[Crim. No. 5211. Second Dist., Div. Two. Nov. 4, 1954.]

THE PEOPLE, Respondent, v. CASPER BERGER, Appellant.

Abe Richman and Edwin M. Rosendahl for Appellant.

Edmund G. Brown, Attorney General, and Jay L. Shavelson, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted on two counts of performing abortions. He appeals from the ensuing judgment and order denying his motion for a new trial.

Count one grew out of his operation on Mrs. Y. She had a telephone conversation with defendant in which he asked her when she had last menstruated and told her that he could "take care of the situation" and that his fee would be $300. Later, she went to defendant's apartment, and gave him $300. She was asked by defendant how she knew she was pregnant. She replied she had been so advised by her doctor and also recognized certain physical symptoms. There was further discussion as to when she had last menstruated. She was given a sedative and told to undress in an adjoining room. After doing so, she lay on an operating table with her feet in stirrups, and was given a hypodermic injection in the arm to determine whether she was allergic to penicillin. After some further preparation she received an injection in her vagina. A speculum was then inserted.

She was given an anesthetic by means of a rubber mask. She felt excruciating pain and was told she was being dilated. At approximately the time the operation was in process of being completed police and investigators from the district attorney's office entered the apartment. Both defendant and Mrs. Y. were asked in each other's presence whether he had performed an operation on her, and each answered ''Yes.'' Mrs. Y., with the speculum still in her person, was taken to the general hospital.

In response to the interrogation of the officers, defendant told them Mrs. Y. had been bleeding when she came to him; that she paid him $300; that he had placed a speculum in her private parts and removed a fetus which he flushed down the toilet. He then produced $300 from the floor beneath the kitchen stove stating that this was the money he had received from Mrs. Y. He was observed pushing back a $100-bill, about which he was interrogated. He then reached down and produced a total of $350 which he claimed he had brought home from a club he operated. He was thereupon asked whether there was any more money in the apartment and he replied in the negative. However, a search disclosed some $6,000 in approximately 15 separate parcels secreted in various places. A number of surgical instruments and devices such as forceps, speculum, tenaculum, cervical dilator, curettes, and a rubber mask, were found in defendant's apartment and he admitted using many of them.

Count two is based on an operation on Miss M., who had made an appointment by 'phone. When she arrived at defendant's apartment she told him she thought she was pregnant but was not sure; that she was about six weeks late with her menstrual period. She paid defendant $300. She then went through a procedure almost identical with that described by Mrs. Y.

There was testimony by five other women on which five other counts were based that was very similar to that of Mrs. Y. and Miss M. The procedure was substantially the same in each case. They testified to the actual operation in varying degrees of particularity. There was testimony from which the court could infer that each woman believed she was pregnant when she came to defendant and so advised him, and that the purpose of the operation was to induce a miscarriage.

In the superior court a jury was waived and it was stipulated that counts one and two might be submitted on the transcript of the testimony given at the preliminary hearing,

the other five counts to be continued to the date set for trial, the defendant reserving the right to introduce additional evidence. At the trial defendant did not take the stand but he did present the testimony of Milton H. Uhley, M. D., a diagnostician. Upon being convicted on counts one and two and probation granted* the remaining counts were dismissed.

Defendant vainly seeks a reversal on the ground that "The evidence is insufficient as a matter of law to establish that appellant intended to procure a miscarriage upon the persons named in Counts One and Two." In support of this proposition he argues that the evidence does not establish actual knowledge on his part of the pregnancy of these women, or that "he believed or had cause to believe" that either was pregnant. The record does not sustain his position. Without further detailing the evidence, it is clear from the testimony of Mrs. Y. and Miss M. and the defendant's statements to the officers at the time of his arrest that defendant had ample cause to believe that each of them was pregnant and that he performed the operation on each with the intent and for the purpose of producing a miscarriage.

Defendant also argues that there is insufficient corroborative evidence and particularly points out that while the instruments found in his apartment might be used in the performance of abortions they could also be used for his avowed purpose of bringing about the women's overdue menstrual periods.

The necessary corroboration may consist of inferences from the circumstances surrounding the criminal transaction. (*People* v. *Wilson,* 25 Cal.2d 341, 347 [153 P.2d 720].) Such evidence is sufficient if it connects the defendant with the commission of the crime in such a way as reasonably to satisfy the trier of fact that the witness whose testimony it supports is telling the truth. (*People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681] ; *People* v. *Henderson,* 34 Cal.2d 340, 342-343 [209 P.2d 785].) "Whether the corroborating evidence by itself is as compatible with innocence as it is with guilt, is a question for the trier of fact, not for the reviewing court." (*People* v. *Estes,* 99 Cal.App.2d 745, 747 [222 P.2d 454] ; *People* v. *Allen,* 104 Cal.App.2d 402, 412 [231 P.2d 896].)

Applying these principles, it is clear there is ample corroborative evidence. There was substantially similar testi-

*"... an order granting probation shall be deemed to be a final judgment . . ." (Pen. Code, § 1237.)

mony by six other women. ▮ It is established that testimony relating to one count may be considered by the trier of fact in corroboration of the testimony of the woman upon whom an abortion was alleged to have been performed in another count. (*People* v. *Malone*, 82 Cal.App.2d 54, 63 [185 P.2d 870]; *People* v. *Kendall*, 111 Cal.App.2d 204, 210-211 [244 P.2d 418].) ▮ The finding of Mrs. Y., undressed, at defendant's apartment, with a speculum inserted in her person, clearly tends to connect him with the commission of the offense charged against him and to indicate his guilt thereof. ▮ Defendant's statements to the officers at the time of his arrest provided further corroborative evidence. (*People* v. *Griffin*, 98 Cal.App.2d 1, 25 [219 P.2d 519].) ▮ Since the card on the door to defendant's apartment indicated that he was engaged in "physiotherapy and spot reducing" and it does not appear that he was licensed to engage in any of the healing arts, or to acquire and administer such drugs as were found in his apartment, the presence of surgical instruments suitable for producing a miscarriage takes on special significance as a corroborating circumstance.

▮ Defendant also argues that in finding him guilty the trial judge did not have sufficiently in mind the transcript of the testimony taken at the preliminary hearing. Defendant bases this argument on the following observation by the judge when the trial opened: "I have read the transcript of the preliminary hearing but I want the record to show that I do not recall it in detail at this time." This comment must be related to the circumstances under which it was made. At an earlier hearing it had been stipulated that the case be submitted on the testimony taken at the preliminary hearing, the defendant, however, reserving the right to introduce additional evidence. When the case was called for trial, the deputy district attorney, being uncertain whether the prior stipulation included the introduction in evidence of the exhibits received at the preliminary hearing, offered such exhibits into evidence. Defendant's then attorney* objected to the receipt in evidence of the money the officers found in defendant's apartment on the grounds that it was "immaterial and irrelevant." He then said, "I will submit it on the argument that I made in the municipal court. I presume your Honor has read my argument?" It was at this point the judge remarked that while he had read the transcript he

---

*Defendant has new counsel on appeal.

did not recall it in detail. Counsel then advised the court that his argument was "based on the immateriality" of such evidence. The court thereupon overruled the objection. Rather than showing inadequate consideration of defendant's case, this incident points to the court's desire to have specifically in mind the basis of counsel's objection. The implied suggestion that counsel refresh the court's mind as to the point of his argument is particularly apropos here because the transcript was more than 200 pages in length and the earlier stipulation had, in fact, as the judge recalled, included the introduction in evidence in this trial of the exhibits that were received at the preliminary hearing. Consequently, there had been no reason for the judge to focus his mind on any objections to the receipt of such exhibits in evidence or to recall the argument in support thereof. ▮ The record does not show that the trial judge did not have the *evidence* in mind in this case when he found defendant guilty. It is presumed that official duty has been regularly performed (Code Civ. Proc., § 1963, subd. 15.) ▮ Furthermore, an appellate court will not indulge in presumptions to defeat a judgment. (*Walling* v. *Kimball*, 17 Cal.2d 364, 373 [110 P.2d 58].)

The judgment and order are affirmed.

Moore, P. J., and McComb, J., concurred.