[Civ. No. 10412.   Third Dist.   Apr. 19, 1962.]

EMERY LEE DOWNS, Petitioner, v. STATE OF CALIFORNIA, Respondent.

610

Donald L. Gilmour, under appointment by the District Court of Appeal, for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Respondent.

PIERCE, J.—Petitioner, an inmate of Folsom Prison, seeks a writ. His prayer labels it a writ of mandate. He desires to have us vacate one of two sentences he is now serving, one for robbery and the other for burglary. His contention is that he has received double punishment for a single "act" in violation of Penal Code section 654. We have concluded his contention is sound. The record shows the following facts:

On June 3, 1948, shortly before midnight, two men, one of whom was determined to be petitioner, broke into the Pacific Telephone Company building in San Jose. While these men were engaged in taking money from a safe, two janitors employed by the company entered the room. The burglars had come prepared for this contingency. They carried a pistol. The janitors at gunpoint were compelled to lie down and were securely bound. Defendant and his confederate then took from the safe $3,500 belonging to the company. Nothing was taken from the persons of the janitors.

Petitioner, on these facts, was convicted of one count of first degree burglary and one count of first degree robbery, both with four prior convictions, sentences to run consecutively. The information, in its count for burglary, charged that petitioner did unlawfully enter the building with intent to commit *theft* therein; in its count for robbery the offense was charged in that petitioner "did, at the time and place aforesaid, wilfully, unlawfully, feloniously and forcibly take from the persons, possession and immediate presence of Ira Miller and S. C. Rogers the sum of $3500.00," the personal property of the said company. Each count charged that petitioner was armed with a concealed weapon at the time.

Judgment was affirmed on appeal in which the question here presented was not decided and apparently was not raised. The decision rests on the sufficiency of the evidence to support the judgment, upon the accuracy of certain instructions and the court also held that the janitors had had "possession" of the money taken under the meaning of the word as used in Penal Code section 211 defining the crime of robbery. (*People* v. *Downs,* 114 Cal.App.2d 758 [251 P.2d 369].)

Penal Code section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such

provisions, *but in no case can it be punished under more than one;* . . . ." (Emphasis added.)

Two cases construing this section are determinative here. They are *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], and *In re Dowding,* 188 Cal.App.2d 418 [10 Cal.Rptr. 392].

The *Neal* case, which involved multiple punishment on counts of attempted murder and arson (occurring when petitioner threw gasoline into the victims' bedroom) sets forth the following rules applicable here: That if any relief by writ is available habeas corpus and not mandamus is the proper remedy to vacate a judgment on the ground of violation of the double punishment proscription; that where the facts alleged justify habeas corpus, it is immaterial that the relief prayed for is mislabeled "mandamus"; that the writ of habeas corpus will issue "to review an invalid sentence, when, without the redetermination of any facts, the judgment may be corrected to 'accord with the only other possible determination in the circumstances' "; that the applicability of a statute to conceded facts is a question of law; that habeas corpus is also a proper remedy to review the issue where the Adult Authority misinterprets Penal Code section 654 and confines petitioner in excess of the time allowed by law. (*Neal* v. *State of California, supra,* pp. 16-18.)

Reaching the merits, the Supreme Court's opinion, written by Justice Traynor, states (*Neal* v. *State of California, supra,* p. 18) that punishment for two offenses arising from the same act is prohibited not only by Penal Code section 654 but by constitutional and common-law rule in so far as either offense is necessarily included in the other; that neither arson nor attempted murder was a necessarily included offense; that said section 654's proscription was not restricted to necessarily included offenses; and quoting from *People* v. *Knowles,* 35 Cal.2d 175, 178 [217 P.2d 1], the court states, at page 19:

" 'If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated.' "

Pointing out that few crimes are the result of a single *physical* act, the court says that the code section encom-

passes a course of conduct constituting more than one "act" in the ordinary sense if the transaction is indivisible and the court adds:

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. *If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."* (Emphasis added.) (*Neal* v. *State of California, supra,* pp. 18-19.)

The court in *Neal* v. *State of California, supra,* held that under the facts there the offenses of arson and attempted murder were incident to one objective.[1]

*In re Dowding, supra,* 188 Cal.App.2d 418, like the case before this court, involved two offenses of burglary and robbery. There petitioner and another entered a drug store at night, preceded by a third accomplice who had covered the druggist with a pistol. The three then stole narcotics, cash and checks and fled. The court, relying on *Neal* v. *State of California, supra,* held that the intent and objective had been a single indivisible act and was therefore within the double punishment prohibition of Penal Code section 654. The court says, on page 423:

". . . [F]or while the crime of burglary was complete when petitioner and his codefendants entered the drug store with the intent to rob the druggist [citing cases], and petitioner might have been convicted of this offense even though he and his confederates had been frustrated in their attempt to rob the druggist, still their acts constituted a continuous course of conduct and the object of that course of conduct was the robbery of which petitioner was convicted. . . ."

The court in *Dowding, supra,* mentions and cites (at p. 423) cases holding that one who commits robbery or larceny after entering a dwelling or store with intent to commit either of those crimes may be convicted and sentenced for both burglary and robbery or larceny as the case may be. It says that these cases cannot be "squared with the reasoning of the Supreme Court in *Neal."* With this we agree—and since hearing was

---

[1]It also held, however, that as to the two separate counts for attempted murder, one to kill Raymond, the other to kill his wife, "Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' " (Citing cases.)

denied in *Dowding,* so presumably does our Supreme Court agree.

Neither robbery nor burglary is a necessarily included offense one with the other. The determination of the instant case, therefore, hinges upon whether the facts here show divisible or indivisible acts.

The Attorney General asserts a distinction between the facts in *Dowding* and the facts here, contending that since the burglary count here charged an entry of the building with intent to commit *theft* which was the offense the petitioner and his confederate were engaged in when the two janitors arrived upon the scene, two separate transactions were involved when the miscreants thereafter held up and bound these men. They add that the trier of facts could well have found that the petitioner's original intent was to enter to commit theft and that the intent to commit robbery originated in his mind after the completion of the first offense.

If the evidence as disclosed by the record justifies the foregoing conclusion, the Attorney General reasons soundly. In the very recent case of *Seiterle* v. *Superior Court,* 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697], the conviction was both for murder and for kidnaping for the purpose of robbery with infliction of bodily harm. It was contended that the only bodily harm inflicted was the murders. But it was held that, as to one of the victims, the record was clear that bodily harm was inflicted before the killing and that, as to the other, there was a prima facie showing that the crimes were separate. It was also held that the "record does not compel the finding that the killings were part of a preconceived plan."

Here, we think, however, the record does compel a conclusion the plan was preconceived as to the robbery. Regardless of the wording of the information, petitioner entered the telephone company building with the single purpose to rifle its safe, hoping, no doubt, that this could be accomplished without interference, but prepared for that event by carrying a gun which he intended to and did threateningly use to consummate the crime. To urge that these guntoting miscreants had limited their original object to safecracking only, upon the unlikely assumption that nightly janitorial service was not performed in the telephone company building is unrealistic and unsupported by the record. The information, had it been worded with strict accuracy, would have accused petitioner of entering with intent to commit *either theft or robbery* as might become necessary.

Certainly, the question of whether a course of conduct is divisible or indivisible cannot be made to depend upon astuteness of the district attorney in drafting an information. And, although, as *Seiterle* holds, a writ cannot issue to disturb an implied finding of indivisibility by a trier of facts where substantial evidence supports it, this implication *should not rest upon insubstantiality*—particularly when one must remember that a man's period of incarceration could conceivably be doubled from 10 years to 20 or even longer, the determination of such sentence being based entirely on speculation.

Punishment for first degree burglary and first degree robbery is identical. (See Pen. Code, §§ 213, 461.) Neither is the more serious. The robbery count was *expressly* upheld in *People* v. *Downs, supra.* It will therefore be retained (with the four prior convictions). The burglary conviction, being in excess of jurisdiction of the court, is set aside and the Adult Authority is directed to exclude from its consideration the purported sentence for burglary. Petitioner is not entitled to release so long as he is held under valid judgments of conviction for his other crimes.

The order to show cause is, therefore, discharged and the writ of habeas corpus is denied.

Peek, P. J., and Schottky, J., concurred.